## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TIMOTHY TOWNSEND, JR.,          :
       Plaintiff,               :
                                      :
     v.                           :            No. 3:19-cv-580 (SRU)
                                        :
CHRISTOPHER SWEET, et al.,      :
       Defendants.          :

## **INITIAL REVIEW ORDER**

On April 18, 2019, Timothy Townsend, Jr., an inmate currently confined at the Carl

Robinson Correctional Institution ("CRCI") in Enfield, Connecticut, brought a complaint *pro se*

and *in forma pauperis* under 42 U.S.C. § 1983 against ten Connecticut Department of Correction

("DOC") officials:  Christopher Sweet, R. Kudzul, Christopher Muckle, B. Stadalnik, Jefferey

Conger, Captain Griffin, Disciplinary Report ("DR") Investigator Nemeth, DR Investigator

Gottlieb, Correction Officer Rodriguez-Jimenez, and Bruce Richardson.  Compl., Doc. No. 1.

Townsend seeks monetary, injunctive, and declaratory relief against the defendants in their

individual capacities for violating his rights under the United States Constitution, Connecticut

Constitution.  *See id.* at 36-41.  For the following reasons, his complaint is dismissed in part.

I.    Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief

may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  Although detailed allegations are not required, the complaint must include

sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they

are based and to demonstrate a plausible right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544,

555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.   Factual Allegations

Townsend alleges the following facts. On April 14, 2016, Townsend was transferred from Osborn Correctional Institution's restrictive housing unit ("RHU") to the RHU at the Corrigan-Radgowski Correctional Center ("Corrigan") to complete the remaining portion of his punitive segregation time that he was ordered to serve while at Osborn. Compl. ¶¶ 12-13. Upon his arrival, Officer Kudzal presented Townsend with a Property Inventory Form and a Property Status Receipt, but Townsend refused to sign the forms because several of his personal belongings were not listed. *Id.* at ¶¶ 14-15. Such items included food and personal cosmetics, which are frequently lost or stolen during facility transfers. *Id.* at ¶ 16. Kudzal became upset when Townsend refused to sign the forms and told him that it was "a bad move." *Id.* at ¶ 17.

After he refused to sign the form, Lieutenant Stadalnik told Townsend that he was going to escort him to RHU. Compl. ¶ 18. Townsend then asked Stadalnik and Kudzul for a "seg-bag," which is a bag containing two pairs of boxers, two pairs of socks, two T-shirts, one pair of shower shoes, one washcloth, one towel, and other hygiene items that is provided to all inmates upon admission into RHU. *Id.* at ¶ 19. Stadalnik told Townsend that he would have to write an inmate request to receive a seg-bag because they are made from the inmate's personal property.

*Id.* at ¶ 20. Townsend told Stadalnik that he had all of the items to form a seg-bag, but Stadalnik and Kudzul refused to provide him with one. *Id.* at ¶¶ 21-23. Townsend later wrote inmate requests to Kudzal, Stadalnik, Officer Muckle, Officer Sweet, and Lieutenant Conger regarding his seg-bag, but none of them responded. *Id.* at ¶ 25.

The next day, while in RHU, Townsend told Conger that he had not been provided with a seg-bag, shower shoes, or clean clothes upon his placement in the RHU. Compl. ¶ 26. Conger directed Townsend to a written memorandum posted in every RHU cell window, which stated that "seg-bags are a cou[r]tesy and [are] provided at the convenience of the property officer." *Id.*

Corrigan officials offered Townsend a shower on April 15, 2016 but told him that he needed to use "community clothing," which is rotated amongst the inmates in the RHU. Compl. ¶ 27. Townsend refused to wear the used clothing, including the used underwear. *Id.* at ¶ 28. He used the shower, but he was forced to use the "community" shower shoes even though they had not been cleaned. *Id.* at ¶ 29. The shoes were wet, soggy, sticky, and stained with foreign substances. *Id.* at ¶ 30. Townsend told Conger that forcing the inmates to share the shower shoes put them at risk of contracting serious illnesses, especially since inmates could only shave while in the shower. *Id.* at ¶ 31. Indeed, when Townsend went to shower, he saw blood on the walls and floor and hair clogging the floor drain, which caused the contaminated water to rise above his feet. *Id.* at ¶ 33. Those conditions caused Townsend to suffer anxiety, but he knew that, if he did not shower, he could be issued a DR for failing to maintain his own personal hygiene. *Id.* at ¶ 32. After he showered, he was forced to put on the same clothing without underwear because he had not been provided with a clean set of clothing. *Id.* at ¶ 35.

Corrigan was reported in 2008 as housing several inmates who had contracted MRSA, but they told the inmates that their infections were caused by spider bites. Compl. ¶ 65. Inmates,

many of whom had open wounds, often showered in their bare feet, which increased the risk of spreading infection. *Id.* at ¶ 67.

Inmates in the RHU at Corrigan are typically allowed to shower three days per week. Compl. ¶ 34. However, on April 17, Townsend completed his RHU time but was not able to shower. *Id.* at ¶ 36. After his release from RHU, an official told him that he would receive his personal property the next day, but on April 18, Townsend did not receive his property. *Id.* at ¶ 37. He asked a correction officer if he could call the property room officer and inquire about his property because he did not have items with which to shower and, thus, had not been able to shower in three days. *Id.* at ¶ 38. The correction officer called the property officer who informed him that Townsend would receive his property the next day, April 19. *Id.* at ¶ 39. Townsend asked the correction officer if he could retrieve some hygiene products so that he could shower and brush his teeth, but the officer told him that he did not have any hygiene products to give to him. *Id.* at ¶ 41.

On April 19, Townsend again asked a correction officer to inquire about his property. Compl. ¶ 45. The officer called the property room officers who again stated that Townsend would receive his property the following day, April 20. *Id.* Townsend told the correction officer that he had not been able to shower or brush his teeth since April 15, but the officer told Townsend that he had to wait to receive his property because he refused to sign the inventory form upon his admission at Corrigan. *Id.* at ¶¶ 45-46. Townsend asked the officer for the name of the official with whom he spoke and to call a supervisor, but the officer refused. *Id.* at ¶ 47.

Townsend later spoke with Correction Counselor McMahon and asked her if she could provide him with a care package, which consists of soap, toothpaste, a toothbrush, and other hygiene products. Compl. ¶ 48. He explained to her that he had not been able to shower or

brush his teeth since April 15.  *Id.*  McMahon denied his request for a care package, stating that Townsend was not indigent and could purchase the items through commissary.  *Id.*  However, if Townsend purchased the items through commissary, he would have to wait two to three weeks to receive his order, depending on when officials took his order form.  *Id.* at ¶ 49.

Townsend then spoke with Captain Griffin regarding his inability to receive his hygiene products and his legal property.  Compl. ¶ 51.  Griffin ordered Townsend to step away from her because of the offensive odor that was emanating from him.  *Id.* at ¶ 52.  Griffin then took Townsend to her office and ordered him to stand outside in the doorway while she called the property room to inquire about his property.  *Id.* at ¶ 53.  After the phone call, Griffin told Townsend that officials were going to perform a shakedown of his cell because she was informed that he had been issued a seg-bag while in RHU.  *Id.* at ¶ 54.  Townsend told Griffin that the property room officers were misleading her, but Griffin picked up the phone and ordered two correction officers to search Townsend's cell.  *Id.*  The officers later called back and told Griffin that Townsend had nothing in his cell except linens.  *Id.* at ¶ 55.  Griffin then became upset, called the property room again, and told them, "You lied to me, this man doesn't have anything in his cell to shower with[.]  [T]herefore, he was not given a seg-bag while in RHU." *Id.* at ¶ 56.  Griffin instructed the property room officer to provide Townsend with everything he needed to shower.  *Id.*

After Griffin hung up the phone, Townsend asked her why she had only ordered the property room to provide him with shower products and not his other property.  Compl. ¶ 57. Griffin told him that she could only procure the shower items at this time and that he would receive his other property the next day, April 20.  *Id.* at ¶ 58.  She advised him to "just sign the inventory this time."  *Id.*

After meeting with Griffin, Townsend went to the property room to retrieve his shower items. Compl. ¶ 62. There, he met with Officer Sweet, who informed him that all of the items that Griffin ordered were on the counter. *Id.* As he inspected the items on the counter, Townsend noticed that there were no shower shoes. *Id.* at ¶ 63. He asked Sweet to provide a pair, but Sweet told him that there were not any shower shoes in the property room to give to him. *Id.* Townsend told Sweet that he could give him the same pair of shower shoes that were in his property box and that, without them, he would be unable to shower safely. *Id.* at ¶ 64. Sweet refused to provide him with the shoes, stating that the items on the counter were all that Griffin told him to provide. *Id.* at ¶ 68. Townsend requested to speak with a supervisor, but Sweet told him that "the lieutenant comes with a ticket." *Id.* at ¶¶ 68-69. Townsend insisted anyway, and Sweet called Lieutenant Stadalnik. *Id.* at ¶ 70.

When Stadalnik arrived, he asked Sweet why he would not simply retrieve Townsend's shower shoes from his property box. Compl. ¶ 70. Visibly upset, Sweet told Stadalnik that he had provided all of the items that Griffin had instructed him to provide. *Id.* Townsend said that he was present when Griffin called Sweet and heard her instruct Sweet to provide him with everything he needed to shower. *Id.* at ¶ 71. Townsend then told Stadalnik that the items on the counter were not sufficient to permit him to shower. *Id.* at ¶ 75. Stadalnik then told Townsend to wait until the next day to receive his property and instructed him to return to his housing unit. *Id.* at ¶¶ 76-77. Before he exited the property room, Townsend told the officials that he was being denied his basic human needs and that another inmate named McKiethen who was released from RHU on the same day had been given his property, to which Sweet responded, "[N]ext time, sign the property inventory form." *Id.* at ¶ 78. Townsend then left the room taking only the toothpaste and toothbrush, as the remaining items were of no use to him. *Id.* at ¶ 79.

Later that day, Sweet issued Townsend a DR for disobeying a direct order. Compl. ¶ 80.

The DR stated the following:

> On 4/19/16, I/M Townsend . . . was summoned to the property room in order to be issued a care package and change of clothes so that he could remain compliant with hygiene protocol. Upon receiving the items issued to him, inmate Townsend was not happy with the transaction and refused to return to his housing unit. This officer issued multiple direct orders to I/M Townsend to return to his housing unit, to which he did not comply. This officer then requested a supervisor to report to the property room where I/M Townsend then capitulated and returned to his unit.

*Id.* at ¶ 81. Before his hearing on the DR, Townsend submitted a number of documents to use as evidence in his defense, but Investigator Nemeth "omitted" them from the hearing. *Id.* at ¶ 82. Townsend's advocate, Officer Dumas, refused to question any witnesses because Nemeth told him that the "investigation was over." *Id.* at ¶ 83. Nemeth also refused to provide Townsend or Dumas with copies of all the documentary evidence that had already been submitted for disposition of the DR. *Id.* at ¶ 84-85.

Townsend was again placed in RHU on April 21, 2016 pending a protective custody assignment due to an assault involving Corrigan staff in January 2015.[1] Compl. ¶ 87. For several days therein, correction officers repeatedly called Townsend a snitch and tampered with his food. *Id.* at ¶ 145. Townsend informed Lieutenant Conger about those actions, but Conger dismissed his complaint as "unsubstantiated," even when Townsend asked him to review the video footage showing that he was being denied meals. *Id.* On May 4, 2016, Townsend was transferred from Corrigan to Enfield Correctional Institution ("Enfield"). *Id.* at ¶ 88. Corrigan officials did not send his personal property to Enfield within the required time frame. *Id.* at ¶ 89.

Upon his arrival at Enfield, Investigator Gottlieb was assigned to preside over Townsend's DR from Corrigan. Compl. ¶ 90. Gottlieb refused to allow Townsend to add

---

[1] Townsend has another civil case pending in this Court stemming from his physical altercation with Corrigan staff in January 2015. *Townsend v. Muckle*, No. 3:17-cv-900 (SRU).

documentation to the record because Nemeth had told him that the "investigation was over." *Id.* at ¶ 91. Townsend told Gottlieb that he should be allowed to prepare a defense up until a day before his hearing, but Gottlieb refused to allow him to submit evidence or view the evidence that had already been submitted. *Id.* at ¶¶ 92-93.

On May 26, 2016, Officer Rodriguez-Jimenez awakened Townsend and told him that he had a DR hearing scheduled for that day. Compl. ¶ 96. He asked Townsend if he wanted to go to the hearing, to which Townsend responded yes. *Id.* Rodriguez-Jimenez then picked up the phone and told an unknown official that Townsend was "taking his sweet time." *Id.* at ¶ 97. Townsend made his bed, as is required in Enfield, brushed his teeth, went to the bathroom, got dressed, and then asked Rodriguez-Jimenez for permission to go to the hearing. *Id.* at ¶ 98. Rodriguez-Jimenez told Townsend that he does not understand why inmates elect a hearing for their DRs because officials "never let them win." *Id.* at ¶ 99. He then called the DR official again, who informed him that Townsend had been found guilty. *Id.* Townsend told Rodriguez-Jimenez that he had heard him tell the official that he was "taking his sweet time," but Rodriguez-Jimenez just smiled and said, "I told you. [W]e'll never let you win." *Id.* at ¶ 100.

Later that day, Townsend received his "process summary form," which stated the reasons for his guilty finding and the sanctions imposed by the hearing officer, Bruce Richardson. Compl. ¶ 101. Townsend had previously met with Richardson in mid-May and informed him that both Nemeth and Gottlieb had prevented him from submitting any evidence in his defense. *Id.* at ¶ 102. Richardson permitted Townsend to submit the evidence that Nemeth and Gottlieb had prohibited. *Id.* at ¶ 103. As a result of the guilty finding, Townsend received thirty days loss of commissary privileges and ten days loss of good-time credit. *Id.* at ¶ 105.

Townsend appealed Richardson's finding on June 2, 2016, listing several due process violations committed by Richardson, Nemeth, Gottlieb, and Dumas. Compl. ¶ 106. On June 28, 2016, District Administrator Angel Quiros overturned the guilty finding and expunged the DR from Townsend's record. *Id.* By that time, however, Townsend had already "served out the entire disciplinary punishment." *Id.* After the appeal was resolved, Gottlieb became upset that the guilty finding was overturned and told Townsend that he would make sure that he never again wins a DR. Compl. ¶ 111. Gottlieb added that, even though the DR was expunged, DOC officials were still successful in punishing Townsend, "so hopefully he . . . knows that he'll never really win, and if he does, it'll only be a titular win." *Id.* Even after the appeal, Townsend's personal property, including his clothes, legal paperwork, and boombox, were still in the possession of Sweet, Muckle, Kudzal, and Stadalnik at Corrigan. Compl. ¶ 112. He filed several complaints requesting that his property be sent to Enfield, but the defendants refused to turn over the items, claiming that they had nothing that belonged to him. *Id.* at ¶ 114.

Townsend filed a motion in his pending state court civil action[2] claiming that his legal paperwork was being withheld. Compl. ¶ 115. The state court ordered defense counsel to contact the DOC about the issue. *Id.* at ¶ 117. Townsend's legal paperwork was later found at Corrigan, but much of it had been lost or destroyed. *Id.* at ¶ 119. As a result, Townsend is now incapable of litigating many of his pending state and federal cases. *Id.* at ¶ 120. Some of the evidence lost or destroyed included copies of e-mails sent between Stadalnik, Kudzul, Muckle, and Sweet discussing their disdain for Townsend for reporting the physical assault from January 2015 and their intent to deprive him of basic human needs. *Id.* at ¶ 121.

---

[2] *Townsend v. Sterling*, No. HHD-CV07-4034524-S (Conn. Super. Ct. Dec. 17, 2007).

Townsend's boombox finally arrived at Enfield on September 26, 2016, approximately six months after his transfer from Corrigan. Compl. ¶ 127. The boombox was listed as "broken," even though it had been in pristine, working condition upon his arrival at Corrigan on April 14, 2016. *Id.* at ¶¶ 123, 127. Kudzul, Muckle, Sweet, and Stadalnik never completed an incident report detailing that his boombox had been damaged during the transfer. *Id.* at ¶ 129. Those defendants accepted responsibility for the damage to the boombox and offered him $58.75 as compensation, but Townsend rejected their offer. *Id.* at ¶¶ 132-38. As a result of the damage, Townsend had to convert his cassette tapes to compact discs. *Id.* at ¶ 137. He was also required to pay the DOC twenty-five dollars to investigate the damage. *Id.* at ¶ 138. Kudzul, Muckle, Sweet, and Stadalnik knew that the boombox had been authorized for Townsend by the Commissioner of Correction and was part of a settlement agreement in another civil case involving Townsend and DOC officials. *Id.* at ¶ 142.

III.    Analysis

As best as I can surmise from his complaint, Townsend is raising five federal constitutional claims based on these allegations: (1) retaliation under the First Amendment against Sweet, Muckle, Kudzul, Stadalnik, and Richardson for destroying his legal paperwork and boombox, writing a false DR, and finding him guilty of the false DR; (2) inhumane conditions of confinement under the Eighth Amendment against Sweet, Muckle, Kudzul, Stadalnik, Griffin, and Conger for depriving him of basic human needs while he was confined at Corrigan; (3) denial of equal protection of the laws under the Fourteenth Amendment against Sweet, Muckle, Kudzul, Stadalnik, and Conger for providing necessary hygiene products only to selected inmates; (4) denial of substantive and procedural due process under the Fourteenth Amendment against Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez for depriving him of

a fair DR hearing and against Sweet, Kudzul, Muckle, and Stadalnik for destroying his boombox; and (5) denial of access to the courts under the First and Fourteenth Amendments against Sweet, Muckle, Kudzul, and Stadalnik for destroying his legal paperwork. Compl. ¶¶ 166-77. Townsend also claims that the actions of Sweet, Muckle, Kudzul, Stadalnik, and Richardson violated his rights under Article First, Sections 4, 5, 8, 9, 10, and 11 of the Connecticut Constitution, and that the deprivation of due process by Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez violated Article First, Sections 8, 9, and 10 of the Connecticut Constitution. *Id.* at ¶¶ 178-88.

A.  First Amendment Retaliation

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. July 9, 2012). "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the inmate, and (3) that there was a causal connection between the protected [speech] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*,

92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

Townsend claims that Sweet, Muckle, Kudzul, and Stadalnik retaliated against him by (1) depriving him of his personal hygiene products while he was confined in the RHU at Corrigan, (2) destroying his legal paperwork and boombox, and (3) filing a false DR against him. With respect to the first retaliation claim, he alleges that Sweet, Kudzul and Stadalnik deprived him of the hygiene products in retaliation for his refusal to sign the property inventory forms, but Townsend only refused to sign the forms because they did not list all of the personal items that belonged to him. The allegations do not show that Townsend was engaged in constitutionally protected speech or conduct simply by refusing to sign a property form. *See Reid v. Donald*, 2013 WL 5437638, at *12 (N.D.N.Y. Sept. 27, 2013) (refusing to sign form for participation in vocational program not constitutionally protected conduct for purposes of retaliation claim). As for the second claim, there are insufficient facts showing that the defendants were responsible for misplacing or destroying his legal paperwork. Townsend alleges that Kudzul, Muckle, Sweet,

and Stadalnik accepted responsibility for damaging his boombox, but he fails to allege facts showing that the damage was done intentionally or that it was causally connected to any constitutionally protected activity. Therefore, the first two retaliation claims against Sweet, Muckle, Kudzul, and Stadalnik are dismissed as conclusory and speculative.

I will, however, permit Townsend's retaliation claim to proceed against Sweet for the filing of the DR. He alleges that Sweet warned him that verbally complaining to a supervisor about his inability to receive all of his necessary shower items would result in a ticket, and when Townsend insisted on speaking with a lieutenant, who instructed Sweet to retrieve Townsend's shower shoes, Sweet filed a DR against Townsend for disobeying a direct order. Construing his allegations liberally, I will permit Townsend's retaliation claim to proceed against Sweet in his individual capacity for damages.

B. Eighth Amendment Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment includes a prohibition against inhumane conditions of confinement. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish an Eighth Amendment violation based upon inhumane conditions, an inmate must demonstrate, that "the prison officials' transgression" was "'sufficiently serious.'" *Id.* This is an objective inquiry. *Id.* Subjectively, the inmate must also demonstrate that "the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.* with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, prison officials cannot

"deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Prison officials cannot expose inmates to conditions that may pose an unreasonable risk of serious damage to the prisoners' future health. *Id.* (citing *Phelps*, 308 F.3d at 185).

In this case, Townsend claims that Sweet, Muckle, Kudzul, Stadalnik, Griffin, and Conger exposed him to inhumane conditions of confinement while he was confined in the RHU at Corrigan by refusing to provide him with necessary hygiene products and clean clothing for several days, thereby depriving him of the ability to shower and brush his teeth. He also alleges facts showing that the conditions of the shower area at Corrigan were extremely unsanitary. Construing his allegations liberally, I will permit Townsend's Eighth Amendment claim to proceed against Sweet, Kudzul, Stadalnik, and Conger. However, the claim against Griffin is factually insufficient because Townsend alleges that Griffin ultimately instructed Sweet to provide him with materials to shower. Although Townsend alleges that Griffin failed to procure all of his property, Griffin told him that he would receive the rest of his property the next day based on his conversation with Smith. There are no facts showing that Griffin acted with deliberate indifference to Townsend's health or well-being. As for Muckle, Townsend only alleges that he failed to respond to his inmate requests regarding his inability to receive his personal items. This allegation, alone, is insufficient to show personal involvement in a constitutional violation. *See Lebron v. Semple*, 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018); *Thorne v. Cuevas*, 2012 WL 1050056, at *6 (D. Conn. Mar. 28, 2012). Therefore, the Eighth Amendment claim may proceed against Sweet, Kudzul, Stadalnik, and Conger but his claims against Griffin and Muckle are dismissed.

C. <u>Fourteenth Amendment Equal Protection</u>

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (*quoting Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). A plaintiff may also state a Fourteenth Amendment equal protection claim under the "class of one" theory by showing that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Townsend claims that Sweet, Muckle, Kudzal, Stadalnik, and Conger denied him equal protection of the laws by depriving him of his personal property when another inmate, who was released from RHU on the same day, was given his property. This allegation, alone, is insufficient to state an equal protection claim. There are no facts showing the circumstances surrounding the other inmate's property and, therefore, insufficient facts showing that the defendants intentionally treated Townsend differently. Therefore, Townsend's equal protection claim is dismissed.

D. Fourteenth Amendment Due Process

15

The Fourteenth Amendment provides that a State shall not "deprive any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Due Process Clause protects both a right to "procedural" due process and a right to "substantive" due process.

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context (involving someone whose liberty interests have already been severely restricted because of his confinement in a prison), an inmate must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). As to the second step of the analysis, the procedural safeguards to which plaintiff is entitled before being deprived of a constitutionally significant liberty interest include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision

and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974).

In order to state a substantive due process claim, a plaintiff must allege that government officials deprived him of a fundamental constitutional right and that they have done so under circumstances that are no less than "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See, e.g.*, *United States v. Medunjanin*, 752 F.3d 576, 590 (2d Cir. 2014) (substantive due process has generally protected "matters relating to marriage, family, procreation, and the right to bodily integrity"); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"); *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005) (describing the "shocks the conscience" standard).

Here, Townsend claims that Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez deprived him of procedural and substantive due process by preventing him from presenting evidence in support of his defense or from viewing the evidence that was being used against him during the disposition of his DR. The guilty finding from the DR resulted in thirty days loss of commissary privileges and ten days loss of good-time credits. Although he alleges that the guilty finding was ultimately overturned and did not result in any punitive confinement, Townsend alleges that he had already "served [his] entire disciplinary punishment" by the time the appeal was resolved. The Second Circuit has recognized the loss of good-time credits as a sufficient deprivation of liberty triggering the need for due process protections. *See Benitez v. Wolff*, 985 F.2d 662, 665 (2d Cir. 1993). Because it is not clear at this point whether Townsend's good-time credits were restored following the appeal, I will permit the procedural due process claim to proceed against Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez at this time. I do not

agree, however, that the defendants' actions amounted to conduct that "shocks the conscience," and therefore, the substantive due process claim is dismissed.

To the extent Townsend is also claiming that Sweet, Kudzul, Muckle, and Stadalnik violated his right to due process by destroying his boombox, his claim fails. "A due process claim is not available to an inmate whose property is taken or destroyed by a prison guard if the state provides an adequate remedy for the deprivation of property." *Jackson v. Dzurenda*, 2012 WL 5448330, at *1 (D. Conn. Nov. 7, 2012). Section 4-141 of the Connecticut General Statutes permits such claims to be presented to the state claims commissioner. *Id.* Townsend acknowledges that the defendants offered him monetary compensation for his damaged boombox but argues that the state remedies are inadequate because he seeks injunctive relief in the form of an order for the defendants to have the boombox repaired. *See* Compl. ¶ 133. He also argues that the only replacement boombox available in the commissary is substantially more expensive than the value of his boombox, and therefore, the defendants are "unjustly enrich[ing]" themselves. *See id.* at 135-36. Townsend has not shown that the state procedural remedies are inadequate based on those claims. Therefore, any due process claim based on the destruction of Townsend's boombox is dismissed.

E. Access to Courts

Townsend may also be attempting to state a claim that Sweet, Kudzul, Muckle, and Stadalnik also denied his right to access the courts under the First and Fourteenth Amendments by destroying his legal paperwork. *See* Compl. ¶ 168. However, Townsend cannot prevail on such a claim because, as I stated earlier, he does not allege sufficient facts alleging that those defendants intentionally destroyed his paperwork. Even if he had, there are no facts showing that the loss of such paperwork caused him actual injury, meaning that they "deprived him of an

18

opportunity to press some nonfrivolous, arguable cause of action in court." *Baker v. Weir*, 2016

WL 7441064, at *2 (D. Conn. Dec. 27, 2016) (quoting *Brown v. Choinski*, 2011 WL 1106232, at

*5 (D. Conn. Mar. 23, 2011)).  Therefore, the access to courts claim is dismissed.

    F.  <u>State Constitutional Claims</u>

    Finally, Townsend brings claims under Article First, Sections 4, 5, 8, 9, 10, and 11 of the

Connecticut Constitution.  I can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v.*

*Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

    Townsend's claim under Article First, Section 4 is based on the defendants' retaliation

against him for exercising his right to free speech.  *See* Compl. ¶ 178.  Section 4 provides that

"[e]very citizen may freely speak, write and publish his sentiments on all subjects, being

responsible for the abuse of that liberty."  Conn. Const. art. I, § 4.  However, there are no

Connecticut cases recognizing a private cause of action under Article First, Section 4, and this

Court has declined to recognize such claims.  *See Groomes v. Frazir*, 2017 WL 7410991, at *6

(D. Conn. Nov. 2, 2017) (citing *Marshall v. Town of Middlefield*, 2012 WL 601783, at *9 (D.

Conn. Feb. 23, 2012)).  Thus, the claim under Section 4 is dismissed.

    It is not well-established whether Article First, Section 5, which provides that "[n]o law

shall ever be passed to curtail or restrain the liberty of speech or of the press;" Conn. Const. art.

I, § 5; creates a private right of action for damages.  *See Lopez v. Smiley*, 375 F. Supp. 2d 19, 24

n.2 (D. Conn. 2005).  In the interest of justice, I will exercise supplemental jurisdiction over that

claim and allow it to proceed against Sweet for the same reasons articulated in Section III(A) of this ruling.

Townsend's claims under Sections 8, 9, 10, and 11 cannot proceed. There is no private action for money damages under Article First, Sections 8 or 10. *See Tyus v. Semple*, 2019 WL 1877076, at *3 (D. Conn. Apr. 26, 2019); *Doe v. Mastoloni*, 2016 WL 593439, at *71 (D. Conn. Feb. 12, 2016). Section 9 provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. I, § 9. Although the Connecticut Supreme Court has authorized a narrow damages action under Article First, Section 9 for a case dealing with illegal searches and seizures; *see Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998); in this case, Townsend is using Section 9 as a basis for his claim that the defendants subjected him to "unlawful punishment." *See* Compl. ¶ 179. Because the state court has not authorized a Section 9 claim in this context, I decline to exercise supplemental jurisdiction over Townsend's claim in this case. *See Silvera v. Conn. Dept. of Corr.*, 726 F. Supp. 2d 183, 199-200 (D. Conn. 2010) (declining supplemental jurisdiction over prisoner's Section 9 claim). Section 11 provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." Conn. Const. art. I, § 11. Townsend's claim under this provision fails for the same reason his due process claim regarding the destruction of his boombox fails. He has not shown that he is unable to obtain just compensation under the state procedural remedy. Therefore, the claims under Sections 8, 9, 10, and 11 of the Connecticut Constitution are dismissed.

G. <u>Declaratory and Injunctive Relief</u>

In addition to damages, Townsend seeks declarations that the defendants violated his

constitutional rights while he was confined at Corrigan and Enfield in 2016. *See* Compl. at 40.

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal

relationships without awaiting a violation of that right or a disturbance of the relationship."

*Colabella v. American Institute of Certified Public Accountants*, 2011 WL 4532132, at *22

(E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to

enable parties to adjudicate claims before either side suffers great damages. *See In re*

*Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). In this case, Townsend's

requests for declaratory relief only concern past actions. He has not identified any legal

relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207

F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated

federal law in the past). Therefore, his requests for declaratory relief are unwarranted.

The only injunctive relief Townsend seeks is a "necessary authorization to have his

broken boombox replaced or repaired." Compl. at 40. As stated earlier, however, Townsend has

failed to state a plausible constitutional claim regarding the damage to his boombox. Therefore,

his request for injunctive relief is dismissed.

### ORDERS

(1) The free speech retaliation claims under the First Amendment to the United States

Constitution and Article First, Section 5 of the Connecticut Constitution may proceed against

Sweet in his individual capacity for damages. The Eighth Amendment conditions of

confinement claim may proceed against Sweet, Kudzul, Stadalnik, and Conger in their individual

capacities for damages. The Fourteenth Amendment procedural due process claim may proceed

against Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez in their individual capacities for

damages. All other claims and requests for relief are dismissed. The clerk is directed to terminate Muckle and Griffin as defendants to this action.

(2) The clerk shall verify the current work addresses for Sweet, Kudzul, Stadalnik, Conger, Nemeth, Gottlieb, Richardson, and Rodriguez-Jimenez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at the confirmed addresses within **twenty-one (21) days** of this order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall mail a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Townsend changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Townsend must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of August 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge